IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JEFFREY ALLAN FOLTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14CV55 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Jeffrey Allan Foltz, brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain review of a final decision of the Commissioner of Social Security denying his claims for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Act. The Court has before it the certified administrative record and cross-motions for judgment.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a POD and DIB on July 23, 2010 alleging a disability onset date of November 24, 2007. (Tr. 15, 27, 116-19.)[1] The application was denied initially and again upon reconsideration. (*Id.* at 56-85, 90-97.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 100-02.) At the June 14, 2012 hearing were Plaintiff, his attorney, and a vocational expert ("VE"). (*Id.* at 25-55.) The ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 15-24.) Plaintiff requested

---

[1] Transcript citations refer to the administrative record. (Docket Entry 7.)

that the Appeals Council review the ALJ's decision. (*Id.* at 10-11.) On July 27, 2012 the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-5.)

## II. FACTUAL BACKGROUND

Plaintiff was 35 years old on the alleged disability onset date. (*Id.* at 23, 116.) He had at least a high school education and was able to communicate in English. (*Id.* at 23.)

## III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not

undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or

---

[2] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3).

3

any other substantial gainful activity[3] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(2)(A).

### A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2) Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3) Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5) Whether the claimant is able to perform any other work considering both his residual functional capacity[4] and his vocational abilities. If so, the claimant is not disabled.

---

[3] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

[4] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and

4

20 C.F.R. § 404.1520.

Here, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of November 24, 2007. (Tr. at 17.) The ALJ next found in step two that Plaintiff had the following severe impairments: bipolar disorder; panic disorder; personality disorder; diabetes mellitus; hypertension; and obesity. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.*) At step four, the ALJ concluded that Plaintiff could perform his past relevant work as a warehouse worker. (*Id.* at 22.) At step five, the ALJ determined alternatively that considering Plaintiff's age, education, work experience, and RFC, there were jobs in the national economy that Plaintiff could perform such as cleaner and assembly line worker. (*Id.* at 23-24.)

### B. Residual Functional Capacity Determination

Prior to step four, the ALJ determined Plaintiff's RFC based on his evaluation of the evidence, including Plaintiff's testimony and the findings of treating and examining health care providers. (*Id.* at 19-22.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform medium work, except that he could never climb ladders, ropes or scaffolds, and could only occasionally balance, stoop or crouch. (*Id.* at 19.) Plaintiff was further required to avoid concentrated exposure to operational control of moving machinery and hazardous machinery and working at unprotected heights. (*Id.*) Plaintiff was

---

mental limitations of her impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. § 404.1545(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

further limited to simple, routine, repetitive tasks in a work environment free of fast paced production requirements, involving only simple, work-related decisions with few, if any, work place changes. (*Id.*) Finally, Plaintiff was limited to work requiring only occasional interaction with the public and co-workers with no tandem tasks. (*Id.*)

### C. Past Relevant Work

The ALJ found in step four that Plaintiff was capable of performing past relevant work as a warehouse worker, which did not require the performance of work-related activities precluded by Plaintiff's RFC. (*Id.* at 22.)

### D. Adjustment to Other Work

The claimant bears the initial burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir. 1979). Once the claimant has established at step four that he cannot do any work he has done in the past because of his severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with his RFC, age, education, and past work experience. *Hunter*, 993 F.2d at 35; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980). Here, the ALJ found that given Plaintiff's age, education, work experience, and RFC, there were other jobs existing in significant numbers in the national economy that he could perform such as a cleaner and assembly line worker. (*Id.* at 23-24.)

## V. ANALYSIS

Plaintiff essentially raises three issues. First, Plaintiff contends that the ALJ erred by

failing to afford controlling weight to the opinion of Plaintiff's treating psychiatrist, Dr. Raymond Andrew. (Docket Entry 10 at 2.) Second, Plaintiff next contends that the ALJ erred by failing to address the factors cited in Social Security Ruling 06-03p. (*Id.*) Last, Plaintiff asserts that the ALJ erred by failing to include, both in the RFC and in a hypothetical to the VE, a limitation permitting Plaintiff to "take breaks as needed to manage his anxiety" and a restriction addressing his moderate limitations in the ability to concentrate. (*Id.*)

### A. The ALJ Complied With the Treating Physician Rule.

Plaintiff argues that the ALJ erred by declining to give controlling weight to the opinion of his treating psychiatrist, Dr. Raymond Andrew. (Docket Entry 10 at 3-9.) The "treating physician rule," 20 C.F.R. § 404.1527(c)(2) generally provides more weight to the opinion of a treating source, because it may "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence." 20 C.F.R. § 404.1527(c)(2).[5] But not all treating sources are created equal. An ALJ refusing to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give it. *Id.* § 404.1527(c)(2)-(6). These factors include: (i) the frequency of examination and the length, nature and extent of the treatment

---

[5] SSR 96–2p provides that "Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p, *Giving Controlling Weight to Treating Source Medical Opinions*. However, where "a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight." *Id.* SSR 96-5p provides further that "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p, *Medical Source Opinions on Issues Reserved to the Commissioner*. However, "opinions from any medical source about issues reserved to the Commissioner must never be ignored, and . . . the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)." *Id.*

relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Id.*

Significantly, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, must be both well-supported by medical signs and laboratory findings as well as consistent with the other substantial evidence in the case record. *Id.* § 404.1527(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *accord Mastro v. Apfel*, 270 at 178. Opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act never receive controlling weight because the decision on that issue remains for the Commissioner alone. 20 C.F.R. § 404.1527(d).

Here, in his Decision, the ALJ evaluated Dr. Andrew's opinions as follows:

> The claimant began medical treatment with psychiatrist Raymond Andrews in June 2010 for bipolar disorder and panic disorder. The claimant had been previously treated by Dr. Andrews several years earlier. The undersigned gives only partial weight to Dr. Raymond Andrew's August 24, 2010 statement the claimant was totally and permanently disabled by his bipolar disorder and severe panic attacks. The opinion expressed is quite conclusory, inconsistent with treatment records, and provides very little explanation of the evidence relied on in forming that opinion. Notably, while the mental status evaluation dated the same day as the statement indicated that the claimant was severely anxious, the claimant was also describe as attentive, with no cognitive deficits, appropriately dressed, cooperative, not agitated, and only mildly depressed. Furthermore, the claimant was assigned a Global Assessment

> Functioning (GAF) score of 50, which is indicative of an individual who has borderline serious/moderate symptoms or difficulties in social, occupational, or school functioning. In addition, at the time of this opinion statement, Dr. Andrew's recent treatment history with the claimant has been quite brief; he has seen the claimant on two or three occasions over the previous two months. It appears that Dr. Andrews relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Finally, this opinion is offered on an issue reserved to the Commissioner, who is the ultimate arbiter of the issue of disability.
>
> Similarly, the undersigned gives only partial weight to Dr. Andrew's March and June 2012 opinions that the claimant is totally disabled and in fact are somewhat contradictory. March 21, 2012 records at one point state that the claimant has a GAF of 40 and at another point note it as 50. Notably, in March 2012, the claimant's primary complaint was insomnia. At that time, while records indicate that the claimant was depressed and had racing thoughts, no mention of panic attacks was made. Dr. Andrews' June 2012 statement that the claimant was markedly or extremely impaired in almost every work related psychiatric limitation appears grossly overstated. He stated that the claimant was markedly impaired even in his ability to carry out very short and simply instructions and extremely limited in his ability to make simple work related decisions. This opinion is not supported by the treatment records and inconsistent with psychological consultative examination records described below stating that the claimant demonstrated the ability to engage in complex activities requiring attention, concentration, persistence and memory. (Exhibits 8F and 10F.)

(Tr. 20-21 referencing Tr. 376-94, 419-27.)

In short, the ALJ concluded that Dr. Andrew's opinions were (1) conclusory, (2) inconsistent with treatment records, (3) with little attendant explanation of the evidence relied on in forming that opinion, (4) internally contradictory, (5) largely reliant on Plaintiff's own subjective complaints, and (6) weighing in on matters reserved for the Commissioner. The

ALJ's comprehensive assessment of Dr. Andrew's opinions, and his decision to only partially diminish his reliance on those opinions, are supported by substantial record evidence for the very reasons the ALJ cites.

First, the ALJ is correct that Dr. Andrew's opinions are rendered in a conclusory fashion. As both the ALJ and Defendant point out, Dr. Andrew's provides little-to-no explanation of the evidence used to form his opinions and the record generally lacks objective medical evidence in support of his conclusory allegations. (Tr. 376-94, 419-27.) *See* 20 C.F.R. § 404.1527(c)(3) (stating that the better explanation a source provides for an opinion, the more weight the Commissioner gives that opinion). There is, for example, no indication that Dr. Andrew concluded any tests on Plaintiff. Instead, Dr. Andrew appears to have been relying in large part, or perhaps exclusively, on Plaintiff's own self-reporting. 20 C.F.R. § 404.1529 (claimant's allegations alone are insufficient to establish disability).

Second, Dr. Andrew's conclusions are inconsistent with the remainder of the record. *See Roberts v. Astrue*, 1:11-cv-00236–MR, 2013 WL 663306, *6 (W.D.N.C. Feb. 22, 2013) (concluding that "an opinion of a treating physician is not entitled to controlling weight if it is unsupported by medically acceptable clinical and laboratory diagnostic techniques and/or inconsistent with other substantial evidence of record") (citing 20 C.F.R. § 404.1527(c)(2)). For example, the records of Plaintiff's primary care physician, Dr. Stephen G. Bissette, demonstrate that Plaintiff's was generally in no apparent distress and his purported symptoms were minimal or adequately treated with medication. (Tr. 332-50, 395-418, 340-41 (June/September 2007 – "doing very well" and "[f]eels the best that he has in a long time"),

334-39, 337 (3/19/09 – "Bipolar disorder, doing well on Klonopin and Lexapro."), 395 – 3/19/2012 ("He has a normal mood an affect. His behavior is normal. Judgment and thought content normal.").) Dr. John F. Warren, a state agency medical consultant, also provided a detailed report complete with psychological testing, a clinical interview, and observations. (*Id.* at 355-75.) Dr. Warren noted some indications of symptom exaggeration, concerns about possible malingering, and other conflicting accounts provided by Plaintiff and in the record. (Tr. 355-56, 360, 365, 367, 371.) In pertinent part, Dr. Warren discounted Plaintiff's statements and concluded that he was capable of performing routine, repetitive workplace tasks with limited social interaction or multi-tasking.[6] (Tr. 372.)

Third, Dr. Andrew's opinion is inconsistent with his own treatment notes. In his visits with Plaintiff post-disability claim, Dr. Andrew – in August 2010, one month after the pending claim was filed – concluded that Plaintiff was "totally and permanently disabled" due to his alleged mental impairment. (Tr. 379.) However, Dr. Andrew simultaneously noted that Plaintiff showed no cognitive defects and was alert, well-oriented, and cooperative. (*Id.*). Likewise, records from Plaintiff's visits to Dr. Andrew in 2011 also lack any objective evidence but, nevertheless, Dr. Andrew determined that Plaintiff was severely depressed and experienced "lots of stress," debilitating panic attacks, racing thoughts, inattentiveness, and suicidal intent. (Tr. 376-78, 387, 421.) Also, in his March 2012 treatment notes, Dr. Andrew contradicted the above-referenced allegations and stated:

---

[6] It is true that Dr. Warren also concluded Plaintiff would have some difficulty in maintaining consistent, full-time employment, due to an alleged need to take breaks as needed to manage his anxiety. (Tr. 372.) However, as explained herein, the ALJ's decision to partially discount Dr. Warren's conclusion in this regard was supported both by substantial evidence and by an RFC which properly accounted for Plaintiff's limitations, which is also supported by substantial evidence.

> Mental status: The patient is overweight large pleasant white male who has fairly flat affect. No evidence of formal thought disorder. He is moderately depressed. Primary complaint is that of insomnia. He has his circadian rhythms upside down. He is neither suicidal nor homicidal. He is not acutely psychot[ic].

(Tr. 419). Additionally, Dr. Andrew made no mention of Plaintiff's alleged panic attacks and/or symptoms related thereto and his bipolar disorder is described as being in "partial remission." (*Id.*)

Dr. Andrew also submitted another contradictory opinion in June 2012 in a checkbox form to document Plaintiff's alleged functional limitations. (*Id.* at 423-27.) Contrary to his March 2012 assessment, here, Dr. Andrew asserted that Plaintiff is a "rapid cycling bipolar [patient]" experiencing panic attacks and severe insomnia. (*Id.* at 424.) Dr. Andrew further opined that Plaintiff was "markedly" or "extremely" impaired in all but a few "work limitations," extremely restricted in activities of daily living and social functioning, and experiencing continual episodes of deterioration or decompensation. (*Id.* at 427.) However, Dr. Andrew provided no explanation or evidence in support of these conclusions, as noted by the ALJ. (*Id.* at 21).

Fourth, as noted above, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act never receive controlling weight because the decision on that issue remains for the Commissioner alone. 20 C.F.R. § 404.1527(d). Dr. Andrew states a number of times in the record in a conclusory fashion that Plaintiff is completely disabled. (*See, e.g.*, Tr. at 376, 419.) However, that is an issue reserved for the Commissioner.

Last, Plaintiff's arguments—which essentially propose alternative ways to view and weigh the evidence—on this issue are not persuasive. (Docket Entry 10 at 3-9.) The fact that plaintiff disagrees with the ALJ's assessment of this evidence does not render the decision improper. For all these reasons, the ALJ's decision to partially discount the medical opinions of Dr. Andrew is supported by substantial evidence.

**B. The ALJ Addressed the Relevant Regulatory Factors.**

Next, Plaintiff alleges that the ALJ failed to address the factors set forth in Social Security Ruling (SSR) 06-03p in evaluating the weight of Dr. Andrew's opinion. (Docket Entry 10 at 10-11.) This claim lacks merit and should be disregarded.

Specifically, SSR 06-03p was issued by the Agency "[t]o clarify how we consider opinions from sources who are not 'acceptable medical sources'. . . ." SSR 06–03p, 2006 WL 2329939, at *1. Only "acceptable medical sources" can provide medical opinions and may be considered for controlling weight. 20 CFR § 404.1527(a)(2), (c). Here, the ALJ never concluded that Dr. Andrew was not an "acceptable medical source." (Tr. 20-21.) Moreover, Plaintiff does not allege otherwise and it is unclear why SSR 06-03p is offered in support of his argument. Plaintiff's argument fails for this reason alone.

In any event, SSR 06-03p contains a brief summary of the regulations governing the evaluation of opinion evidence, which is what Plaintiff appears to be referencing. Specifically, as noted above, an ALJ refusing to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give it. 20 C.F.R. § 404.1527(c)(2)-(6). As further explained above, these factors include: (i) the

frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Id.* The ALJ need not discuss all of these factors, but must give good reasons for the weight assigned to a treating source's opinion. *See, e.g.*, 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, 1996 WL 374188, at *5; *Fitzgerald v. Colvin*, No. 2:12-CV-78-D, 2013 WL 6178563, at *4 (E.D.N.C. Nov. 25, 2013) (unpublished) (collecting cases); *Ware v. Astrue*, No. 5:11-CV-446-D, 2012 WL 6645000, at *2 (E.D.N.C. Dec. 20, 2012) (unpublished).

Here, as demonstrated above, the ALJ considered the relevant factors. Given that the undersigned has already described the application of these factors, this issue requires little more than a brief recapitulation. First, the ALJ noted that while Dr. Andrew began managing Plaintiff's medications in June 2010, he previously treated Plaintiff several years earlier.[7] (Tr. 20.) The ALJ also summarized Dr. Andrew's treatments notes, prior to attributing weight to his opinions. (*Id.* at 20-21.) Consequently, the ALJ considered the frequency of examination and the length, nature and extent of the treatment relationship. Second, the ALJ also considered the supportability of Dr. Andrew's medical opinions and concluded, with justification, that they were conclusory, with little or no support, and were based in large part or entirely upon Plaintiff's self-reporting of his symptoms. (*Id.* at 20.) *See, e.g., Bacnik v. Colvin*, No. 1:12–CV–801, 2014 WL 3547387, at *2 (M.D.N.C. Jul. 17, 2014) (unpublished)

---

[7] Consequently, Plaintiff's contention that the ALJ "erred in finding that [Plaintiff] began seeing Dr. Andrew in June 2010" is without merit. (Docket Entry 10 at 7; Tr. 20, 360, 423.)

14

(mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion) (citation omitted). The ALJ further explained that Dr. Andrew's opinions were inconsistent with the remainder of the record, including the opinions of Drs. Bissette and Warren. (*Id.* at 20-21.) Third, and last, the ALJ was well aware of Dr. Andrew's specialization as a psychiatrist, and, in fact, referred to Dr. Andrew's as a psychiatrist in his Decision. (*Id.* at 20.) Plaintiff's claim that the ALJ failed to meaningfully consider the relevant regulatory factors is without merit.

### C. The ALJ Properly Accounted for Dr. Warren's Opinion.

Last, Plaintiff contends that the ALJ erred by failing to mention in the RFC or in a hypothetical to the VE (1) an alleged need to "take breaks as needed to manage his anxiety" and (2) a moderate limitation "in his ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks." (Docket Entry 10 at 11.) These restrictions were found in Dr. Warren's medical opinion. (Tr. 372-73.)

The ALJ considered DDS consultant Warren's opinion, described it in great detail, and then adopted it, as follows, except insofar as it concluded that Plaintiff could not maintain employment:

> During that March 2011 psychological consultative examination, the claimant provided a lot of conflicting information and his behavior was reportedly suggestive of malingering. Records note that his performance on the mental status evaluation suggested impairment far more significant than would be supported by observed and reported abilities. For example, the claimant stated that he could not remember four spoken words long enough to repeat them immediately after hearing them. However, he could perform serial 7's without error. He was unable to recall four digits during Digit Span, but then correctly recalled five digits. He reported his panic attacks

happen out of nowhere, but then stated that he is likely to have panic attacks in crowds. He often gave "near-miss" answers. The examiner also found that there were marked inconsistencies and discrepancies in the claimant's self-report and the available records. The examiner diagnosed the claimant with mood disorder not otherwise specified (NOS); panic disorder with agoraphobia; and rule out malingering. The claimant was assigned a GAF of 55, which is indicative of an individual who has moderate symptoms or difficulties in social, occupation, or school functioning. The examiner concluded that was no evidence of significant impairment of the claimant's ability to understand or respond to questions. His social interaction was polite and appropriate to the situation. It was felt that the claimant would likely have some difficulty maintaining consistent, full time employment due to his maladaptive pattern of experiencing, interpreting, and responding to his environment. He had demonstrated, however, the ability to engage in complex activities requiring attention, concentration, persistence, and memory such as pursing a protracted workplace discrimination lawsuit against his former employer. He also reported no difficulty doing things such as cooking or keeping up on the latest developments in the computer industry. He would likely have no significant social interaction or multitasking and that afforded him a flexible schedule so that he would be able to take breaks as needed to manage his anxiety according to the techniques he learned previously in psychotherapy.

    The undersigned notes that the consulting physician, Dr. John Warren, submitted a detailed report, which included psychological testing, a clinical interview, and observations. The undersigned finds that the examination was thorough and generally consistent with the evidence of record but finds that *the evidence is not strong enough to suggest that maintaining consistent employment would be too difficult for the claimant.* The undersigned finds that Dr. Warren's opinion is otherwise consistent with simple, routine, low stress jobs with only occasional interactions with others as reflected in the residual functional capacity determination.

(Tr. 21-22 (emphasis added).) Then, in setting Plaintiff's RFC, the ALJ limited Plaintiff to "simple, routine, repetitive tasks in a work environment free of fast paced production

requirements, involving only simple, work-related decisions with few, if any, work place changes. Finally, he is limited to work requiring only occasional interaction with the public and co-workers with no tandem tasks." (Tr. 19.)

The ALJ, as fact-finder, must formulate the RFC assessment. 20 C.F.R.§ 404.1546(c); *Colvard v. Chater*, 59 F.3d 165 (4th Cir. 1995) (unpublished) ("The determination of a claimant's residual functioning capacity lies with the ALJ, not a physician, and is based upon all relevant evidence"). Consequently, a medical opinion, such as Dr. Warren's, does not necessarily bind an ALJ as to a claimant's functional limitations. *See* 20 C.F.R. §§ 404.1546(c), 404.1527(c)(2). As explained in SSR 96-5p, an individual's RFC is not a "medical issue[ ] regarding the nature and severity of an individual's impairment(s) but [is an] administrative finding[ ]." SSR 96–5p, 1996 WL 374183, at *2 (2 July 1996). Upon careful review, the undersigned concludes that the ALJ gave sound reasons rooted in the record for partially discounting Dr. Warren's report. (Tr. 21-22, 355-74.)

Additional reasons support the ALJ's decision. First, Plaintiff's purported moderate limitation to sustain focus and concentration to permit the timely completion of work-related tasks was conveyed to the VE by the ALJ and included in Plaintiff's RFC. In her hypothetical, the ALJ noted that due to Plaintiff's mental impairments "limit[ing] his ability to concentrate," the hypothetical individual was confined to simple, routine, repetitive tasks to be performed in a "low stress environment with only occasional change in work setting, occasional decision making responsibilities, occasional judgment requirement, no production rate or pace work." (Tr. 49.) In turn, limitations concerning Plaintiff's alleged concentration

and task completion issues were determined as findings of facts and addressed in the RFC – "The claimant is further limited to simple, routine, repetitive tasks in a work environment free of fast paced production requirements, involving only simple, work-related decisions with few, if any, work place changes. Finally, he is limited to work requiring only occasional interaction with the public and co-workers with no tandem tasks." (*Id.* at 19).

Plaintiff cites roughly two dozen non-binding, unpublished cases and contends that these cases demonstrate that the ALJ erred here by not specifically mentioning "moderate" limitations in Plaintiff's ability to focus and concentrate. (Docket Entry 10 at 16.) However, many of these cases are factually distinguishable from the case at hand and, as a more general matter, the cases Plaintiff cites do not stand for the proposition that the specific limitations presented to the VE and incorporated in the RFC here can never adequately account for moderate limitations in concentration, persistence and pace. And, in fact, ample case law—including case law from this Court—demonstrates the contrary.[8]

Second, the ALJ was not obligated to—and clearly did not—adopt Dr. Warren's opinion that Plaintiff be limited to jobs that allow him to take undefined breaks as needed. It is within the ALJ's authority to reject this notion and formulate an RFC consistent with the

---

[8] *See, e.g., Hawley v. Astrue*, No. 1:09CV246, 2012 WL 1268475, at *7 (M.D.N.C. Apr. 16, 2012) ("[T]he restriction to unskilled, simple, routine, repetitive tasks and limited interaction with others adequately accounted for Plaintiff's intellectual deficit and problems with concentration, persistence, and pace, in light of the evidence that Plaintiff can perform such two-hour blocks, as an eight-hour workday typically."); *Parker v. Astrue*, 792 F. Supp. 2d 886, 895-96 (E.D.N.C. 2011) (rejecting attack on ALJ's hypothetical premised on claim that "limiting the [claimant] to 'simple, routine, and repetitive tasks' did not account for [the claimant's] borderline intellectual functioning and moderate concentration difficulties" where "state psychologist found that [the claimant] was only moderately limited in the ability to maintain attention and concentration for extended periods"); *Adams v. Astrue*, No. CV07-1248, 2008 WL 2812835, at *4 (W.D. La. June 30, 2008) (unpublished) ("A limitation to simple, repetitive, routine tasks adequately captures deficiencies in concentration, persistence or pace . . . [of] no more than moderate." (citing cases from three circuits)).

substantial evidence set forth in the record. Moreover, as Defendant correctly points out, Plaintiff's argument that the ALJ accepted this extreme functional limitation because she summarized Dr. Warren's report is mistaken. When the ALJ addressed Dr. Warren's report, she noted his opinion that Plaintiff should have a flexible schedule, including breaks "as needed" to manage his alleged symptoms. However, by reciting Dr. Warren's opinion as to Plaintiff's limitations, the ALJ did not adopt it in full.

More specifically, the ALJ, when concluding that Dr. Warren's findings were "generally consistent with the evidence of record" and "the evidence is not strong enough to suggest that maintaining consistent employment would be too difficult for the claimant" (Tr. 22), rejected any finding by Dr. Warren that "maintaining consistent employment would be too difficult for Plaintiff" (Tr. 22). Instead, the ALJ clearly set forth the functional limitations that she did accept and converted them into the RFC finding as described above, including limiting Plaintiff to the performance of "simple, routine, low stress jobs with only occasional interactions with others" (Tr. 22, 19). As Defendant persuasively points out, because Dr. Warren's suggestion that Plaintiff needed breaks on an "as needed" basis is consistent with Dr. Warren's unduly restrictive finding that Plaintiff may lack the ability to maintain full-time employment, the ALJ clearly rejected that finding too. Thus, when reading the ALJ's decision as a collective whole, Plaintiff's argument that the ALJ did anything other than reject an "as needed" ability to take breaks is unpersuasive.

## VI. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the

Commissioner's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 9) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be **GRANTED** and the final decision of the Commissioner be upheld.

                                                                    _____
                                                                    Joe L. Webster
                                                                    United States Magistrate Judge

Durham, North Carolina
January 23, 2015